## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## ATHENS DIVISION

ONE SIXTY OVER NINETY, LLC,     :

                      :     Case No.: _____

          Plaintiff,     :

                      :

     v.                  :

                      :

OLOGIE, LLC,                 :

                      :

          Defendant.     :

## NOTICE OF REMOVAL

Defendant Ologie, LLC ("Ologie") hereby removes the above-captioned case pending in the Superior Court of Athens-Clarke County, Georgia to the United States District Court for the Middle District of Georgia.  This Court has jurisdiction over this matter pursuant to 18 U.S.C. § 1836(c), and 28 U.S.C. §§ 1331, 1332, 1367, 1441 and 1446.  As grounds for removal, Ologie states as follows:

## PROCEDURAL HISTORY

1.     On September 15, 2017, Plaintiff One Sixty Over Ninety, LLC filed this state court action (the "Action") by filing a verified complaint entitled *One Sixty Over Ninety, LLC v. Ologie, LLC*, Civil Action File No. SU170899 in the Superior Court of Athens-Clarke County in the State of Georgia (the "Complaint").

2.    The Complaint names as defendant Ologie, LLC.  The Complaint alleges a federal claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, a state law claim under the Georgia Trade Secrets Act, O.C.G.A. § 10-1-761 *et seq.*, and state law claims for expenses of litigation, punitive damages and injunctive relief.

3.    Defendant Ologie first received a copy of the Complaint on October 2, 2017 and was served with the Summons and Complaint (attached hereto as Exhibit A) on October 11, 2017.

4.    Pursuant to 28 U.S.C. § 1446(a) and (b), this Notice of Removal is being filed in the United States District Court for the Middle District of Georgia within thirty days after October 2, 2017.

## FEDERAL QUESTION JURISDICTION AND SUPPLEMENTAL JURISDICTION

5.    This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c), and supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367.

6.    Specifically, this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because, in its Complaint, Plaintiff asserts a cause of action for violation of the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.  See* Complaint ¶¶ 41-51.  Furthermore, 18 U.S.C. § 1836(c) provides the "district

courts of the United States shall have original jurisdiction of civil actions brought under this section."

7.    Plaintiffs also assert various state law causes of action.  *See* Complaint First, Third and Fourth Causes of Action.  Because these pendent state law claims arise out of a common nucleus of operative fact with Plaintiff's federal claim, and form part of the same case or controversy, this Court may also exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

8.    Accordingly, this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1367(a) and 1441(a), and 18 U.S.C. § 1836(c), in that it is an action arising under the laws of the United States, and also involves claims within the supplemental jurisdiction of this Court.

## DIVERSITY JURISDICTION

9.    Defendant Ologie, LLC is a citizen of the State of Ohio.  The members of Ologie are Beverly Ryan, Bill Faust and Kelly Ruoff, each of whom is a resident and citizen of the State of Ohio.  Accordingly, Defendant Ologie is a citizen of the State of Ohio for purposes of diversity jurisdiction.

10.    Plaintiff alleges that it is a Delaware limited liability company with its principal place of business at Philadelphia, Pennsylvania.  Complaint ¶ 1.  Upon information and belief, the members of Plaintiff are Shannon Slusher and Darryl Cilli, each of whom are residents and citizens of the State of Pennsylvania.

11.    Accordingly, for purposes of diversity jurisdiction, Plaintiff is a citizen of the State of Pennsylvania.

12.    Pursuant to 28 U.S.C. § 1446(c)(2)(B), Ologie states that the Complaint seeks both nonmonetary relief and monetary relief, but the applicable state practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded.  Furthermore, upon information and belief, and based on the allegations in the Complaint, the amount in controversy is in excess of $75,000, exclusive of interest and costs.  Plaintiff alleges that Ologie has obtained and used trade secret information of Plaintiff for work Ologie has performed for Ologie clients (allegations which Ologie denies). *See* Complaint ¶¶ 21-22.  Plaintiff seeks actual damages, statutory double damages, attorneys' fees, punitive damages, and injunctive relief.  *See* Complaint ¶ 60.

13.    In summary, in addition to federal question jurisdiction and supplemental jurisdiction, this Court also has diversity jurisdiction over this Action pursuant to 28 U.S.C. §§ 1332(a)(1) and 1441(a) & (b) because it is an action between citizens of different states, no defendant is a citizen of the State of Georgia, wherein the Complaint was filed, and the jurisdictional amount-in-controversy is satisfied.

## OTHER PROCEDURAL REQUIREMENTS

14.    This Action is removable to this Court pursuant to 28 U.S.C. § 1441(a) because the United States District Court for the Middle District of Georgia, Athens Division, embraces the place, Athens-Clark County, Georgia, where the state Action is pending.

15.    In accordance with 28 U.S.C. § 1446(a), attached hereto are copies of all process, pleadings and orders served on Defendant Ologie in the Action, namely the Summons and Complaint.

16.    Defendant Ologie will promptly serve a copy of the Notice of Removal on Plaintiff's counsel and file with the Clerk of the Superior Court, Athens-Clarke County, Georgia, a Notice of Filing of Notice of Removal pursuant to 28 U.S.C. § 1446(d).

17.    This Notice of Removal is signed pursuant to Fed. R. Civ. P. 11. *See* 28 U.S.C. § 1446(a).

18.    Pursuant to 28 U.S.C. § 1446(a), Defendant has filed herewith a copy of the Summons and the Complaint (both attached as Exhibit A); there have been no other process, pleadings or orders served upon the Defendant in the State Court action.

WHEREFORE, this Action should proceed in the United States District Court for the Middle District of Georgia, Athens Division as an action properly removed thereto.

Respectfully submitted this 23rd day of October, 2017,

                              /s/ Bruce P. Brown_____
                              Bruce P. Brown
                              Georgia Bar No. 064460
                              Bruce P. Brown Law LLC
                              1123 Zonolite Rd. NE
                              Suite 6
                              Atlanta, Georgia 30306
                              (404) 881-0700

                              *Counsel for Defendant Ologie, LLC*

Of counsel:

Jeffrey A. Lipps
Michael N. Beekhuizen
Carpenter Lipps& Leland
280 Plaza, Suite # 1300
280 North High Street
Columbus, OH 43215
Main Phone:(614)365-4100

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Notice Of Removal was filed electronically on October 23, 2017. Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel. The parties may access this filing through the Court's ECF system. A copy of the foregoing Notice Of Removal was also served by ordinary U.S. Mail on October 23, 2017 on the following:

> Jeffrey W. Willis
> Austin J. Hemmer
> Rogers & Hardin LLP
> 2700 International Tower
> 229 Peachtree Street, N.E.
> Atlanta, Georgia  30303
>
> *Attorneys for Plaintiff*

> /s/ Bruce P. Brown
> *One of the Attorneys for Defendant Ologie, LLC*

a 29

11-14

## SUPERIOR COURT OF CLARKE COUNTY
## STATE OF GEORGIA

FRANKLIN COUNTY

2017 SEP 29 PM 2: 04

**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
CLARKE COUNTY, GEORGIA

**SU17CV0899**
DAVID R. SWEAT
SEP 15, 2017 05:14 PM

Beverly Logan, Clerk
Athens - Clarke County, Georgia

CIVIL ACTION NUMBER  SU17CV0899

One Sixty Over Ninety, LLC

**PLAINTIFF**                        VS.

PIR

Ologie, LLC

**DEFENDANT**

*Bill Faust, Managing Partner*
*Ologie, LLC*
*447 E. Main St.*
*Cols, Oh 43215*

### SUMMONS

TO THE ABOVE NAMED DEFENDANT: Bill Faust, Managing Partner
Ologie, LLC
447 East Main Street, Columbus, Ohio 43215

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**Jeffrey Willis**
**Rogers & Hardin LLP**
**229 Peachtree Street, NE, 2700 International Tower**
**Atlanta, Georgia 30303**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 15th day of September, 2017.**

Clerk of Superior Court

Beverly Logan, Clerk
Athens - Clarke County, Georgia

Page 1 of 1

# EXHIBIT A

EFILED IN OFFICE
CLERK OF SUPERIOR COURT
CLARKE COUNTY, GEORGIA

SU17CV0899

DAVID R. SWEAT
SEP 15, 2017 05:14 PM

Beverly Logan, Clerk
Athens - Clarke County, Georgia

## IN THE SUPERIOR COURT OF ATHENS-CLARKE COUNTY
## STATE OF GEORGIA

|  |  |  |
|---|---|---|
| **ONE SIXTY OVER NINETY, LLC** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION FILE** |
| | ) | **NO. _____** |
| **OLOGIE, LLC** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

### VERIFIED COMPLAINT

---

COMES NOW Plaintiff One Sixty Over Ninety, LLC ("Plaintiff" or "One Sixty") and

states its Verified Complaint[1] against Defendant as follows:

### THE PARTIES

1.      Plaintiff is a Delaware limited liability company with its principal place of business

located at 510 Walnut Street, 19th Floor, Philadelphia, Pennsylvania 19106.

2.      Defendant Ologie, LLC ("Ologie") is an Ohio limited liability company with its

principal place of business located at 447 East Main Street, Columbus, Ohio 43215.   Pursuant to

O.C.G.A. § 9-10-94, process may be served on Ologie's registered agent, Alan K. Veatch, c/o

CPM Statutory Agent Corp, 366 East Broad Street, Columbus, Ohio 43215.

3.      Ologie is subject to the jurisdiction of this Court pursuant to O.C.G.A. §

9-10-91(1)-(3).   As set forth below, Ologie conducts business in Georgia, committed a tortious

---

[1] Plaintiff filed a prior action against Defendant Ologie, LLC concerning some of the same claims styled *One Sixty Over Ninety, LLC v. Ologie, LLC and the University of Georgia Foundation*, Case No. SU17CV0549, Superior Court of Athens-Clarke County, Georgia. Plaintiff dismissed that prior action without prejudice on August 7, 2017.   Pursuant to O.C.G.A. § 9-11-41(d), Plaintiff conferred with the office of the Clerk of the Superior Court of Athens-Clarke County and was informed that there are no unpaid court costs related to that prior action.

act in Georgia, and caused a tortious injury in Georgia.   Venue is proper in this Court pursuant to

O.C.G.A. § 9-10-93.   Clarke County is the county wherein a substantial part of the business was

transacted and the county wherein the tortious act, omission, or injury occurred.

## FACTS

4.      Plaintiff is a creative services agency that provides a wide range of organizations

with integrated solutions in the areas of branding, strategy, design, media, advertising, public

relations, video, and photography.   Plaintiff's current and past clients include, *inter alia*,

institutions of higher education, professional sports franchises, major automakers, and sports

apparel brands.

5.      Defendant Ologie is also a creative services agency and one of Plaintiff's

competitors.   Ologie competes with Plaintiff primarily in the field of higher education.

6.      In June 2015, Wendy Jones, Executive Assistant to Karri Hobson-Pape, Vice

President for Marketing and Communications at the University of Georgia at Athens ("UGA"),

contacted Plaintiff regarding a prospective branding initiative concerning UGA.

7.      In October 2015, Ms. Hobson-Pape also contacted Plaintiff to introduce herself and

to encourage Plaintiff to participate in the upcoming request for proposals related to the initiative.

8.      In November 2015, Plaintiff held a conference call with Hobson-Pape and others

regarding the branding initiative and the plan for an upcoming request for proposal (an "RFP").

Following the conference call, Plaintiff followed up with Ms. Hobson-Pape by email and provided

certain information requested by Hobson-Pape, including an RFP guide and creative samples.

9.     In December 2015, Ms. Jones emailed Plaintiff and asked for information to assist in the development of an RFP.   Ms. Jones confirmed that the information Plaintiff provided would be kept confidential.

10.     On December 18, 2015, Ms. Jones emailed Plaintiff and requested that Plaintiff present via webcast on January 15, 2016.   Ms. Jones stated that presentation materials would be distributed to UGA's Strategic Brand Initiative Committee (the "Committee") and that presentations would be recorded so any Committee member unable to attend live could view the recording.   The Committee included 15 individuals, all of whom were associated with UGA. Ms. Jones further stated that after this presentation, she would forward the RFP to Plaintiff, and after Plaintiff responded to the RFP, Plaintiff would make a live presentation on campus.

11.     On January 15, 2016, as requested, Plaintiff made a presentation to the Committee by webcast.

12.     On January 29, 2016, Ms. Jones emailed Plaintiff the RFP for the Strategic Brand Initiative for a Comprehensive Capital Campaign (the "RFP").   Among other things, the RFP requested that Plaintiff provide information concerning: (1) Plaintiff's fee structure; (2) budget details broken down by agency fees, productions, media, travel, and incidentals; (3) details regarding Plaintiff's approach and timeline for this engagement, including Plaintiff's methods, research approach, and recommendations; and (4) examples of creative work.

13.     On February 3, 2016, Ms. Jones emailed Plaintiff with dates and times available for the upcoming live presentation on UGA's campus.   Plaintiff promptly responded but was told that the only option was February 18, 2016.

14.     Plaintiff delivered its response to the RFP to Ms. Hobson-Pape on February 11, 2016 (the "Proposal").   The Proposal was directed to Ms. Hobson-Pape and stamped "Confidential & Proprietary."   The Proposal contained, among other things, confidential information concerning Plaintiff's proprietary methods, approach, personnel structuring, and pricing.

15.     Defendant Ologie also submitted a proposal in response to the RFP.

16.     On February 12, 2016, Ms. Jones emailed Plaintiff with information regarding the upcoming live presentation.   Ms. Jones stated that this presentation would be recorded for members of the Committee who were unable to attend.

17.     On February 16, 2016, Ms. Jones stated again via email that the presentation would be recorded for any Committee members unable to attend.

18.     Plaintiff presented its Proposal at an in person meeting on UGA's campus in Athens, Georgia on February 18, 2016.   Among other things, the presentation included confidential information concerning Plaintiff's proprietary methods, approach, personnel structuring, and pricing, as well as creative samples, which disclose Plaintiff's proprietary method of deploying such samples.   Plaintiff allowed the presentation to be recorded based on the assurances by UGA that the video would be used solely to show Plaintiff's presentation to absent Committee members. Ologie received similar representations from UGA and was on notice of the terms under which Plaintiff provided the Information.

19.     Ologie was selected by the Committee as the creative services agency for the Strategic Brand Initiative for a Comprehensive Capital Campaign.

20.    Plaintiff subsequently learned that on March 7, 2016, UGA shared with Ologie—for its review and use—Plaintiff's confidential and proprietary information.    Ologie knew that UGA was under a duty not to reveal Plaintiff's confidential and proprietary information to Ologie.    This information included Plaintiff's initial web presentation, Plaintiff's live presentation of its Proposal, and a curated selection of Plaintiff's creative work samples in a proprietary new business format (collectively, the "Information").    UGA referred to the Information as "[e]xamples of work from other vendors," and Ologie asked if UGA wanted Ologie to focus on any specific examples in performing its work on the Comprehensive Capital Campaign.

21.    Upon information and belief, Ologie has utilized the Information in connection with its work on the UGA Strategic Brand Initiative for a Comprehensive Capital Campaign.

22.    Upon information and belief, Ologie has also utilized the Information in bids for prospective work in competition with Plaintiff, has used the Information in association with work for other clients of Ologie, and has otherwise used the Information for its own monetary gain, causing damage to Plaintiff.    Ologie has made other attempts to acquire similar information from its competitors, including Plaintiff.    Ologie has also been more successful in competitive bids after acquiring the Information, likely because Ologie is using the Information to underbid Plaintiff and using the Information to bolster its proposals and work product.

23.    Plaintiff's knowledge of the extent to which Ologie and UGA have used and disclosed the Information to Plaintiff's detriment is limited by a court order in a separate civil action involving Plaintiff and Ologie concerning Plaintiff's hiring of former Ologie employees filed by Ologie on September 7, 2016.    *See Decision and Order, Ologie, LLC v. One Sixty Over*

*Ninety, LLC*, Case No. 16CVH-8442 (Court of Common Pleas, Franklin County, Ohio), a copy of which is attached hereto as Exhibit A.

24.    As set forth in Exhibit A, several of Ologie's employees testified as to Ologie's acquisition and use of the Information.   Ologie designated this testimony as "Confidential" and "Attorney's Eyes Only," and Plaintiff moved the Ohio court to lift that designation so that Plaintiff could evaluate Ologie's use and acquisition of the information and protect its rights.   Ologie opposed the motion and sought to prohibit Plaintiff from learning of the true manner and extent of its acquisition and use of the Information.   The Ohio court refused to lift the designations, stating, "The videotaped presentation itself may be One Sixty's proprietary information, but testimony relating to the circumstances under which Ologie and one of its clients reviewed and discussed the video is precisely the type of especially sensitive and confidential business information which the Protective Order seeks to protect."   *Id.* at 4.   Thus, because of this Order and a prior order from the Ohio court requiring the former Ologie employees hired by Plaintiff to refrain from disclosing Ologie's confidential or trade secret information, Plaintiff has been prevented from learning the extent to which Ologie and UGA have used and disclosed the Information.

25.    The Information is not commonly known or available to the public and derives economic value from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.

26.    Indeed, on August 22, 2016, Ologie made a request under the Texas Public Information Act to obtain Plaintiff's response to an RFP concerning the University of Texas, demonstrating its desire to obtain information similar to the Information to obtain a competitive advantage.   With respect to that request, the Texas Attorney General concluded that Plaintiff's

materials were excepted from disclosure because disclosure would give a competitor (such as Ologie) an advantage in competitive bidding.

27.    Plaintiff undertakes efforts that are reasonable under the circumstances to maintain the secrecy of the Information.   For example, Plaintiff's computer systems where the Information is maintained utilize password protection and are only accessible by employees with a need to view the Information.   In addition, Plaintiff's employees sign an employment agreement, an employee handbook, and a separate confidentiality agreement, all of which contain strict rules concerning the use of confidential and proprietary information, such as the Information.

28.    The Information is also marked "Confidential & Proprietary" when submitted to prospective clients.   In this case, Plaintiff allowed the presentation to be recorded based on the assurances by UGA that the video would be used solely to show Plaintiff's presentation to absent Committee members.   After it discovered UGA shared the Information with Ologie, Plaintiff had multiple discussions with UGA regarding the extent to which the Information was disclosed and the need to maintain its confidentiality as a trade secret.   Plaintiff has also submitted an affidavit to UGA in accordance with O.C.G.A. § 50-18-72 attesting to the trade secret nature of the Information to prevent its possible disclosure in response to an open records request.   Since learning of this incident, Plaintiff has also required a prospective client that sought to record Plaintiff's presentation not only to agree that the recording will not be disseminated beyond the search committee, but that it will also be destroyed, and Plaintiff required verification of the same.

29.    Plaintiff acts diligently and vigorously to prevent the public disclosure of its confidential and proprietary information, such as the Information in this case.   For example, Plaintiff objects to the disclosure of such information in response to any open records requests

made to Plaintiff's government institution clients and prospective clients.   By way of example, Plaintiff is currently taking measures to prevent the disclosure of similar information submitted to the University of Texas.   To that end, attached hereto as <u>Exhibit B</u> is a February 13, 2017 letter from Jennifer Copeland, Texas Assistant Attorney General, Open Records Division, and attached hereto as <u>Exhibit C</u> is Plaintiff's March 10, 2017 response to the findings announced in the February 13, 2017 letter.   As set forth in the February 13, 2017 letter, the Texas Assistant Attorney General determined that some of the same information at-issue in this litigation was protected from disclosure as trade secrets.   Plaintiff is taking all available actions to protect the remaining information at issue in that matter from disclosure.

30.    With respect the above-referenced Texas open records request, Ologie also objected to the request, and, as detailed in the February 13, 2017 letter, took the position that much of the same type of information at issue in this case was protected from disclosure in that matter as a trade secret.

31.    Because of its experience in the industry, its likely receipt of similar representations from UGA regarding their intent for recording the vendors' various presentations, and its interactions with Plaintiff, Ologie knew or should have known upon receipt of the Information from UGA that the Information was acquired by improper means, acquired under a duty to maintain its secrecy, or acquired by accident or mistake.

## FIRST CAUSE OF ACTION
## VIOLATION OF GEORGIA TRADE SECRETS ACT

32.    Plaintiff repeats and restates paragraphs 1 through 31 as if fully set forth herein.

33.    The Information is not commonly known or available to the public and derives economic value from not being generally known to and not being readily ascertainable by proper

means by other persons who can obtain economic value from its disclosure or use, and the Information is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

34.    Ologie's acquisition, use, and disclosure of the Information constitutes misappropriation in violation of the Georgia Trade Secrets Act.

35.    Ologie knew or should have known that the Information was acquired by improper means, acquired under a duty to maintain its secrecy, or acquired by accident or mistake.

36.    As a result of Ologie's misappropriation of the Information, Plaintiff has been irreparably harmed and has sustained damages in an amount to be determined at trial.

37.    Plaintiff has no adequate remedy at law, and is entitled to injunctive relief pursuant to O.C.G.A. § 10-1-762.

38.    Plaintiff is also entitled to damages pursuant to O.C.G.A. § 10-1-763.

39.    Plaintiff is also entitled to recover double damages pursuant to O.C.G.A. § 10-1-763(b) because Ologie's misappropriation was willful and malicious.

40.    Plaintiff is also entitled to its reasonable attorney fees pursuant to O.C.G.A. § 10-1-764.

## SECOND CAUSE OF ACTION
## VIOLATION OF DEFEND TRADE SECRETS ACT

41.    Plaintiff repeats and restates paragraphs 1 through 40 as if fully set forth herein.

42.    The Information derives economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the Information, and the Information is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

43.     The Information is related to services used in, or intended for use in, interstate commerce.   To that end, Plaintiff's creative services are used by clients nationwide, and the Information is utilized in providing such services.    In addition, UGA's Comprehensive Capital Campaign targets students and alumni nationwide.    Thus, it was intended that the Information would be used in interstate commerce.

44.     Ologie's acquisition, use, and disclosure of the Information constitutes misappropriation in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*

45.     Ologie knew or should have known that the Information was acquired by improper means or acquired under a duty to maintain its secrecy or limit its use.

46.     In addition, Ologie knew or should have known before any material change in position that the Information was a trade secret and that the Information had been acquired by accident or mistake.

47.     As a result of Ologie's misappropriation of the Information, Plaintiff has been irreparably harmed and has sustained damages in an amount to be determined at trial.

48.     Plaintiff has no adequate remedy at law and is entitled to injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A).

49.     Plaintiff is also entitled to damages pursuant to 18 U.S.C. § 1836(b)(3)(B).

50.     Plaintiff is also entitled to recover double damages pursuant to 18 U.S.C. § 1836(b)(3)(C) because Ologie's misappropriation was willful and malicious.

51.     Plaintiff is also entitled to its reasonable attorney fees pursuant to 18 U.S.C. § 1836(b)(3)(D).

## THIRD CAUSE OF ACTION
## EXPENSES OF LITIGATION

52.    Plaintiff repeats and restates paragraphs 1 through 51 as if fully set forth herein.

53.    Ologie has acted in bad faith in connection with the events set forth herein, has been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense.

54.    Pursuant to O.C.G.A. § 13-6-11, Ologie is liable to Plaintiff for its litigation expenses, including reasonable attorney fees.

## FOURTH CAUSE OF ACTION
## PUNITIVE DAMAGES

55.    Plaintiff repeats and restates paragraphs 1 through 54 as if fully set forth herein.

56.    Ologie's actions show willful misconduct, fraud, wantonness, or that entire want of care that gives rise to a presumption of conscious indifference to the consequences.

57.    Because Ologie acted with the specific intent to cause harm to Plaintiff, there is no limit to the amount of punitive damages for which Ologie is liable.

58.    Pursuant to O.C.G.A. § 51-12-5.1, Plaintiff prays for an award of punitive damages to punish Ologie and to deter it from engaging in similar misconduct in the future.

## JURY DEMAND

59.    Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

60.    WHEREFORE, Plaintiff demands that process issue and that this Court grant relief against Defendant and in favor of Plaintiff as follows:

(a)    Award Plaintiff compensatory damages, double damages, and punitive damages;

(b)    Disgorge Ologie of all profits and benefits obtained as a result of their unlawful conduct described in this Verified Complaint;

(c)    Issue injunctive relief prohibiting Ologie from disseminating or using Plaintiff's confidential and proprietary information and trade secrets;

-11-

(d)     Issue an order requiring Ologie to immediately return to Plaintiff all information belonging to Plaintiff;

(e)     Award Plaintiff its reasonable attorney fees, expenses of litigation, and costs; and

(f)     Award Plaintiff such other and further relief as the Court deems just and proper.

**ROGERS & HARDIN LLP**

/s/ Jeffrey W. Willis
Jeffrey W. Willis
Georgia Bar No. 766575
Austin J. Hemmer
Georgia Bar No. 563104

2700 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
(404) 420-4619 (Willis)
(404) 420-4637 (Hemmer)
(404) 525-2224
jwillis@rh-law.com
ahemmer@rh-law.com

## IN THE SUPERIOR COURT OF ATHENS-CLARKE COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| ONE SIXTY OVER NINETY, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO. _____ |
| OLOGIE, LLC | ) | |
| | ) | |
| Defendant. | ) | |

---

### VERIFICATION

---

Personally appeared before me, the undersigned officer duly authorized to administer oaths, Shannon Price Slusher, Chief Executive Officer of Plaintiff One Sixty Over Ninety, LLC, who, after being duly sworn, states that he has personal knowledge or knowledge derived from records maintained in the ordinary course of business of the facts set forth in the Verified Complaint, and such information is true and correct.

This 15th day of September, 2017.

Shannon Price Slusher
Chief Executive Officer
One Sixty Over Ninety, LLC

Sworn to and subscribed before me this 15 day of September, 2017.

_Grace M. Cheatley_
Notary Public (Signature)
My Commission expires: _____

GRACE M. CHEATLEY
NOTARY PUBLIC OF NEW JERSEY
ID # 2445628
My Commission Expires 4/24/2018

Sworn to and subscribed
before me this
15 day of Sept, 2017

# EXHIBIT A

IN THE COURT OF COMMON PLEAS, FRANKLIN COUNTY, OHIO
CIVIL DIVISION

OLOGIE, LLC,                                        :

     Plaintiff,                                  :            Case No.  16CVH-8442

vs.                                                :            JUDGE K. BROWN

ONE SIXTY OVER NINETY, LLC, et al.,                :

     Defendants.                                 :

### DECISION AND ENTRY

*Rendered this 13th day of January, 2017*

This matter is before the Court upon the Motion of Defendant One Sixty Over Ninety, LLC (hereinafter "One Sixty") to Remove Confidential and Attorneys' Eyes Only Designations From Certain Deposition and Hearing Testimony, filed November 18, 2016. On December 2, 2016, Plaintiff Ologie, LLC (hereinafter "Ologie") filed a Memorandum in Opposition.  One Sixty filed a Reply on December 9, 2016, in excess of the Court's seven page limit.  After being informed of its noncompliance, on December 12, 2016, One Sixty filed a Motion for Leave to File a Reply Brief in Excess of Seven Pages, or in the Alternative, to File an Edited Reply Brief.  On December 14, 2016, Ologie filed a Response, agreeing to One Sixty's motion for leave so long as the Court granted Ologie permission to file its attached sur-reply.  One Sixty filed a Reply on December 15, 2016.

The motions are now ripe for consideration by the Court.

### BACKGROUND

Ologie is a Columbus, Ohio branding and marketing firm which serves clients throughout the country, principally in higher education.  One Sixty is headquartered in Philadelphia, and is a direct competitor of Ologie in the higher education segment of the industry.  On September 7, 2016, Ologie initiated the instant action seeking injunctive relief

Case 3:17-cv-00147-CRL    Document 1    Filed 10/23/17    Page 24 of 44
Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Jan 13 2:02 PM-16CV008442
16CVH-8442

and damages. Ologie alleges that two of its former executives, Defendants Carey Schmitt (hereinafter "Schmitt") and J. Matthew Yuskewich (hereinafter "Yuskewich), accepted employment at One Sixty and commenced an illegal campaign to raid Ologie's employees, trade secrets, and confidential information. Ologie alleges that Schmitt and Yuskewich are in violation of their Non-Compete Agreements and Ohio law.

On September 8, 2016, Duty Judge Richard A. Frye held a hearing on Ologie's Motion for a Temporary Restraining Order. Judge Frye granted the motion, in part, issuing an Order prohibiting all Defendants from soliciting or hiring Ologie employees or independent contractors, requiring that Schmitt and Yuskewich refrain from disclosing Ologie's confidential or trade secret information, and requiring that One Sixty refrain from using any Ologie information.

The Court ordered an evidentiary hearing on Ologie's Motion for a Preliminary Injunction and referred the matter to Magistrate Mike Thompson for that purpose.[1] After several expedited discovery disputes which required the Court's attention, the parties entered into an Agreed Protective Order. The Protective Order authorizes the parties to designate "nonpublic confidential, personal, financial, proprietary or commercially sensitive information" as "Confidential." ¶ 2. It further authorizes the parties to designate material that "contains or reflects trade secrets and/or other especially sensitive confidential business information" as "Attorneys' Eyes Only." *Id.*, ¶ 7. The parties agreed that no material designated as either "Confidential" or "Attorneys' Eyes Only" would be released to individuals outside of this litigation. See *id.*

Pursuant to the Agreed Protective Order, Ologie designated portions of the hearing and deposition testimony of Beverly Ryan, William H. Faust, Matthew J. Freedman,

---

[1] The preliminary injunction hearing took place before Magistrate Thompson on November 1-2, 2016. On November 11, 2016, Magistrate Thompson adopted the Preliminary Injunction jointly submitted by Defendants One Sixty, Schmitt, and Yuskewich.

16CVH-8442

Whitney Lee, Steven Brothers-McGrew, Erin Burk, and Kelly Ruoff as either "Confidential" or "Attorneys' Eyes Only." One Sixty now challenges those designations.

## LAW AND ANALYSIS

The Protective Order sets forth a process by which a party may challenge a designation of "Confidential" or "Attorneys' Eyes Only." ¶ 21. Pursuant to the Order, the burden of proof to maintain confidentiality is placed upon the producing party. *Id.* As such, Ologie has the burden to demonstrate that the testimony in question is "nonpublic confidential, personal, financial, proprietary or commercially sensitive information" to maintain its designation as "Confidential," and that the testimony "contains or reflects trade secrets and/or other especially sensitive confidential business information" to maintain its designation as "Attorneys' Eyes Only."

The testimony at issue relates to a One Sixty pitch that was videotaped by the University of Georgia (hereinafter "UGA"). In February 2016, One Sixty and Ologie were among four marketing firms invited to UGA to present pitches in response to a Request for Proposal. The pitch presentations were videotaped by UGA.[2] In March 2016, UGA awarded the contract to Ologie. UGA then forwarded the other firms' videotaped presentations (including One Sixty's) to Ologie to review for different marketing and branding strategies. The appropriateness of UGA's actions and Ologie's subsequent conduct are not issues presently before this Court.

Substantial time at each deposition was devoted to questioning the deponent about how Ologie came to be in possession of One Sixty's videotaped presentation, the way in which Ologie subsequently stored the video, the identity of Ologie employees that viewed the video, and each of those individuals' intentions. Ologie designated this testimony as

---

[2] The parties dispute the extent to which they knew the presentations were being videotaped and reviewed, but the Court finds this issue irrelevant to its present analysis.

16CVH-8442

"Confidential" and/or "Attorneys' Eyes Only," submitting that the testimony contains confidential and especially sensitive business information that One Sixty intends to use for purposes outside of this lawsuit.  Specifically, Ologie submits that One Sixty seeks to challenge UGA's actions, tortiously interfere in Ologie's business relationship with UGA, and generally embarrass Ologie for their alleged misappropriation of One Sixty's videotaped presentation.

One Sixty concedes that its primary interest in the de-designation of the testimony is for the purpose of challenging UGA's actions.[3]  One Sixty moves the Court to remove the "Confidential" and "Attorneys' Eyes Only" designations, submitting that Ologie is attempting to keep its "suspicious" conduct, and that of UGA, from scrutiny.  This, however, directly contradicts the terms and spirit of the parties' Agreed Protective Order, which seeks to prevent the use of discovery material for purposes outside of this lawsuit.

One Sixty submits that Ologie is not entitled to designate the testimony as "Confidential" or "Attorneys' Eyes Only," because the testimony concerns One Sixty's proprietary information rather than Ologie's.  The videotaped presentation itself may be One Sixty's proprietary information, but testimony relating to the circumstances under which Ologie and one of its clients reviewed and discussed the video is precisely the type of especially sensitive and confidential business information which the Protective Order seeks to protect.

Counsel for One Sixty submits that One Sixty should be permitted to review the material so that One Sixty's principals and other employees can contribute meaningfully to One Sixty's unclean hands defense.  The allegations in this case are that, beginning in May 2016, One Sixty, Schmitt, and Yuskewich systematically raided Ologie's employees, trade

---

[3] Indeed, during the deposition of Matthew J. Freedman, a One Sixty founder and executive, interjected: "I am telling you the State of Georgia is going to treat this very differently, by the way." T. p. 91.

16CVH-8442

secrets, and confidential information.  The Court finds that the testimony at issue would not be even tangentially relevant to a defense of unclean hands.  A defense of unclean hands must involve transactions or conduct related to the claims in the lawsuit.  *Gardner v. Bisciotti*, 10th Dist. No. 10AP-375, 2010-Ohio-5875.  Further, there is nothing to support a finding that One Sixty even knew that Ologie had received and reviewed its UGA presentation at the time the alleged "raid" of Ologie occurred.

The Court finds that removal of Ologie's "Confidential" and "Attorneys' Eyes Only" designations would serve no legitimate purpose, and as such, finds One Sixty's motion not well taken.

## CONCLUSION

Accordingly, Defendant One Sixty Over Ninety, LLC's Motion to Remove Confidential and Attorneys' Eyes Only Designations From Certain Deposition and Hearing Testimony, filed November 18, 2016, is hereby **DENIED**.  Defendant One Sixty Over Ninety, LLC's Motion for Leave to File a Reply Brief in Excess of Seven Pages, or in the Alternative, to File an Edited Reply Brief, filed December 12, 2016, is hereby **GRANTED**, *instanter*.  Ologie's request to file a sur-reply, filed December 14, 2016, is **DENIED** as the proposed sur-reply is unnecessary for the Court's determination.

**IT IS SO ORDERED.**

Franklin County Court of Common Pleas

**Date:**              01-13-2017

**Case Title:**        OLOGIE LLC -VS- ONE SIXTY OVER NINETY LLC ET AL

**Case Number:**       16CV008442

**Type:**              ENTRY

It Is So Ordered.

/s/ Judge Kim Brown

Electronically signed on 2017-Jan-13     page 6 of 6

Court Disposition

Case Number:  16CV008442

Case Style:  OLOGIE LLC -VS- ONE SIXTY OVER NINETY LLC ET AL

Motion Tie Off Information:

1. Motion CMS Document Id: 16CV0084422016-11-1899970000
    Document Title: 11-18-2016-MOTION - DEFENDANT: ONE SIXTY OVER NINETY LLC - OF DEFT TO REMOVE CONFIDENTIAL AND ATTY
    Disposition: MOTION DENIED


2. Motion CMS Document Id: 16CV0084422016-12-1299980000
    Document Title: 12-12-2016-MOTION FOR LEAVE TO FILE - DEFENDANT: ONE SIXTY OVER NINETY LLC
    Disposition: MOTION GRANTED

# EXHIBIT B



KEN PAXTON
ATTORNEY GENERAL OF TEXAS

OFFICE OF GENERAL COUNSEL
REC'D FEB 14 2017
Cook

February 13, 2017

Ms. Ana Vieira Ayala
Assistant General Counsel & Public Information Coordinator
The University of Texas System
201 West 7th Street, Suite 600
Austin, Texas 78701-2901

OR2017-03206

Dear Ms. Ayala:

You ask whether certain information is subject to required public disclosure under the Public Information Act (the "Act"), chapter 552 of the Government Code. Your request was assigned ID# 645542 (OGC # 172884).

The University of Texas (the "university") received a request for proposals and tabulation sheets pertaining to request for proposals number 721-1629. Although you take no position as to whether the submitted information is excepted under the Act, you state release of this information may implicate the proprietary interests of third parties. Accordingly, you state, and provide documentation showing, you notified 160over90; Anderson Marketing Group; Birdsall, Voss and Associates, Inc.; Blacktop Creative ("Blacktop"); Bruce Mau Design; Burson-Marsteller; Deutser, LLC ("Deutser"); Door Number 3; Educational Marketing Group; Finn Partners; Fuseideas; Interbrand; JODesign, L.L.C. ("JODesign"); Mindbridge Partners ("Mindbridge"); Ologie; Page Southerland Page; Pulsepoint Group; Purple Group; Richards Carlberg ("Richards"); Sentia Vera; Siegelvision; Simpson Scarborough; SME Design ("SME"); Spring Design Partners ("Spring"); and VDS of the request for information and of their right to submit arguments to this office as to why the submitted information should not be released. *See* Gov't Code § 552.305(d); *see also* Open Records Decision No. 542 (1990) (statutory predecessor to section 552.305 permits governmental body to rely on interested third party to raise and explain applicability of exception in the Act in certain circumstances). We have received comments from 160over90, Blacktop, Deutser, JODesign, Mindbridge, Ologie, Richards, SME, and Spring. We have considered the submitted arguments and reviewed the submitted information.

Ms. Ana Vieira Ayala- Page 2

Initially, we note an interested third party is allowed ten business days after the date of its receipt of the governmental body's notice under section 552.305(d) to submit its reasons, if any, as to why information relating to that party should be withheld from public disclosure. *See* Gov't Code § 552.305(d)(2)(B). As of the date of this letter, we have not received comments from the remaining third parties explaining why their information should not be released. Therefore, we have no basis to conclude any of the remaining third parties has a protected proprietary interest in the submitted information. *See id.* § 552.110; Open Records Decision Nos. 661 at 5-6 (1999) (to prevent disclosure of commercial or financial information, party must show by specific factual evidence, not conclusory or generalized allegations, that release of requested information would cause that party substantial competitive harm), 552 at 5 (1990) (party must establish *prima facie* case that information is trade secret), 542 at 3. Accordingly, the university may not withhold any of the information at issue on the basis of any proprietary interest the remaining third parties may have in it.

We understand Spring to assert its submitted information is confidential because it was given to the university in confidence. We note that information is not confidential under the Act simply because the party that submits the information anticipates or requests that it be kept confidential. *See Indus. Found. v. Tex. Indus. Accident Bd.*, 540 S.W.2d 668, 677 (Tex. 1976). In other words, a governmental body cannot overrule or repeal provisions of the Act through an agreement or contract. *See* Attorney General Opinion JM-672 (1987); Open Records Decision Nos. 541 at 3 (1990) ("[T]he obligations of a governmental body under [the Act] cannot be compromised simply by its decision to enter into a contract."), 203 at 1 (1978) (mere expectation of confidentiality by person supplying information does not satisfy requirements of statutory predecessor to section 552.110). Consequently, unless the information at issue falls within an exception to disclosure, it must be released, notwithstanding any expectation or agreement to the contrary.

Section 552.104(a) of the Government Code excepts from disclosure "information that, if released, would give advantage to a competitor or bidder." Gov't Code § 552.104(a). A private third party may invoke this exception. *Boeing Co. v. Paxton*, 466 S.W.3d 831 (Tex. 2015). The "test under section 552.104 is whether knowing another bidder's [or competitor's information] would be an advantage, not whether it would be a decisive advantage." *Id.* at 841. Blacktop, JODesign, Richards, SME, and Spring state they have competitors. In addition, Blacktop states release of the information it seeks to withhold would give an advantage to its competitors and cause serious harm to Blacktop. JODesign states release of the information it seeks to withhold would allow its competitors to underbid JODesign on future bids and obtain a competitive advantage over JODesign in the marketplace. Richards states release of its information could provide its competitors with an advantage. In addition, SME states release of the information it seeks to withhold would allow its competitors to undercut SME's future bids. Spring states release of the information it seeks to withhold would be "extremely harmful" to its business. After review of the

Ms. Ana Vieira Ayala- Page 3

information at issue and consideration of the arguments, we find Blacktop, JODesign, Richards, SME, and Spring have established the release of the information at issue would give advantage to a competitor or bidder. Thus, we conclude the university may withhold the information we have marked under section 552.104(a).

Next, 160over90, Deutser, Mindbridge, and Ologie claim some of their information is excepted under section 552.110 of the Government Code, which protects (1) trade secrets, and (2) commercial or financial information, the disclosure of which would cause substantial competitive harm to the person from whom the information was obtained. *See* Gov't Code § 552.110(a), (b). Section 552.110(a) protects trade secrets obtained from a person and privileged or confidential by statute or judicial decision. *Id.* § 552.110(a). The Texas Supreme Court has adopted the definition of trade secret from section 757 of the Restatement of Torts. *See Hyde Corp. v. Huffines*, 314 S.W.2d 763 (Tex. 1957); *see also* ORD 552. Section 757 provides that a trade secret is

> any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers. It differs from other secret information in a business . . . in that it is not simply information as to single or ephemeral events in the conduct of the business . . . . A trade secret is a process or device for continuous use in the operation of the business . . . . [It may] relate to the sale of goods or to other operations in the business, such as a code for determining discounts, rebates or other concessions in a price list or catalogue, or a list of specialized customers, or a method of bookkeeping or other office management.

RESTATEMENT OF TORTS § 757 cmt. b (1939); *see also Huffines*, 314 S.W.2d at 776. In determining whether particular information constitutes a trade secret, this office considers the Restatement's definition of trade secret as well as the Restatement's list of six trade secret factors.[1] RESTATEMENT OF TORTS § 757 cmt. b (1939). This office must accept a

---

[1] The Restatement of Torts lists the following six factors as indicia of whether information constitutes a trade secret:

> (1) the extent to which the information is known outside of [the company];
> (2) the extent to which it is known by employees and other involved in [the company's] business;
> (3) the extent of measures taken by [the company] to guard the secrecy of the information;
> (4) the value of the information to [the company] and [its] competitors;
> (5) the amount of effort or money expended by [the company] in developing the information;
> (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

claim that information subject to the Act is excepted as a trade secret if a *prima facie* case for the exception is made and no argument is submitted that rebuts the claim as a matter of law. *See* ORD 552 at 5. However, we cannot conclude that section 552.110(a) is applicable unless it has been shown that the information meets the definition of a trade secret and the necessary factors have been demonstrated to establish a trade secret claim. *See* Open Records Decision No. 402 (1983).

Section 552.110(b) protects "[c]ommercial or financial information for which it is demonstrated based on specific factual evidence that disclosure would cause substantial competitive harm to the person from whom the information was obtained[.]" Gov't Code § 552.110(b). This exception to disclosure requires a specific factual or evidentiary showing, not conclusory or generalized allegations, that substantial competitive injury would likely result from release of the information at issue. *Id.*; *see also* ORD 661 at 5-6 (to prevent disclosure of commercial or financial information, party must show by specific factual evidence, not conclusory or generalized allegations, that release of requested information would cause that party substantial competitive harm).

Upon review, we find 160over90, Deutser, Mindbridge, and Ologie have established some of the information each company seeks to withhold constitutes trade secrets. Therefore, the university must withhold the information we have marked under section 552.110(a) of the Government Code; however, to the extent the customer information we have marked is publicly available on the websites of 160over90, Deutser, Mindbridge, or Ologie it may not be withheld under section 552.110(a). However, 160over90, Deutser, Mindbridge, and Ologie have failed to demonstrate that any of the remaining information the companies seek to withhold meets the definition of a trade secret, nor have these companies demonstrated the necessary factors to establish a trade secret claim for this information. *See* Open Records Decision No. 319 at 3 (1982) (information relating to organization and personnel, professional references, market studies, qualifications, and pricing are not ordinarily excepted from disclosure under statutory predecessor to section 552.110). Thus, none of the remaining information at issue may be withheld under section 552.110(a) of the Government Code.

Upon review of the arguments by160over90, Deutser, Mindbridge, and Ologie under section 552.110(b), we find 160over90, Deutser, Mindbridge, and Ologie have established some of the remaining information they seek to withhold constitutes commercial or financial information, the release of which would cause the companies substantial competitive injury. Therefore, the university must withhold the information we have marked under section 552.110(b) of the Government Code. However, we find 160over90, Deutser, Mindbridge, and Ologie have failed to make the specific factual or evidentiary showing required by section 552.110(b) that release of any of their remaining information would

---

RESTATEMENT OF TORTS § 757 cmt. b (1939); *see also* Open Records Decision Nos. 319 at 2 (1982), 306 at 2 (1982), 255 at 2 (1980).

Ms. Ana Vieira Ayala- Page 5

cause the companies substantial competitive harm under section 552.110(b) of the Government Code. *See* Open Records Decision Nos. 661 (for information to be withheld under commercial or financial information prong of section 552.110, business must show by specific factual evidence that substantial competitive injury would result from release of particular information at issue), 509 at 5 (1988) (because costs, bid specifications, and circumstances would change for future contracts, assertion that release of bid proposal might give competitor unfair advantage on future contracts is too speculative). Accordingly, none of the remaining information at issue may be withheld under section 552.110(b).

Section 552.147 of the Government Code provides that "[t]he social security number of a living person is excepted from" required public disclosure under the Act. *Id.* § 552.147(a). Accordingly, the university may withhold the submitted social security numbers under section 552.147 of the Government Code.

We note some of the materials at issue may be protected by copyright. A custodian of public records must comply with the copyright law and is not required to furnish copies of records that are copyrighted. Open Records Decision No. 180 at 3 (1977). A governmental body must allow inspection of copyrighted materials unless an exception applies to the information. *Id.*; *see* Open Records Decision No. 109 (1975). If a member of the public wishes to make copies of copyrighted materials, the person must do so unassisted by the governmental body. In making copies, the member of the public assumes the duty of compliance with the copyright law and the risk of a copyright infringement suit.

In summary, the university may withhold the information we have marked under section 552.104(a) of the Government Code. The university must withhold the information we have marked under section 552.110(a) of the Government Code; however, to the extent the customer information we have marked is publicly available on the websites of 160over90, Deutser, Mindbridge, or Ologie it may not be withheld under section 552.110(a) of the Government Code. The university must withhold the information we have marked under section 552.110(b) of the Government Code. The university may withhold the submitted social security numbers under section 552.147 of the Government Code. The remaining information must be released, but any information subject to copyright may only be released in accordance with copyright law.

This letter ruling is limited to the particular information at issue in this request and limited to the facts as presented to us; therefore, this ruling must not be relied upon as a previous determination regarding any other information or any other circumstances.

This ruling triggers important deadlines regarding the rights and responsibilities of the governmental body and of the requestor. For more information concerning those rights and responsibilities, please visit our website at http://www.texasattorneygeneral.gov/open/ orl_ruling_info.shtml, or call the Office of the Attorney General's Open Government Hotline, toll free, at (877) 673-6839. Questions concerning the allowable charges for

Ms. Ana Vieira Ayala- Page 6

providing public information under the Act may be directed to the Office of the Attorney General, toll free, at (888) 672-6787.

Sincerely,

Jennifer Copeland
Assistant Attorney General
Open Records Division

JC/sb

Ref:     ID# 645542

Enc.    Submitted documents

c:       Requestor
         (w/o enclosures)

         28 Third Parties
         (w/o enclosures)

# EXHIBIT C



March 10, 2017

Bob Davis
Open Records Coordinator
The University of Texas at Austin
201 West Seventh Street
Austin, Texas 78701

SENT VIA EMAIL

**ID# 645542 (OGC # 172884)**

Dear Bob

**Release of records related to our proposal to the McCombs School of Business (July 22, 2016)**

We are surprised and disappointed at the findings of Jennifer Copeland, Assistant Attorney General, Open Records Division dated February 13, 2017 and which reached us by mail on February 21, 2017. Quite apart from the fact that our most recent defense against such a request (OGC # 171330) was upheld in its entirety with no information being released to our competitor, Ologie, it is clear that the ability to make this type of request is intended to ensure a fair and transparent procurement process. It is equally clear that the type of request from Stamats is not for this purpose, but simply and cynically to obtain an unfair competitive advantage to the detriment of its competitors, including One Sixty Over Ninety. This information and insights being sought by Stamats are highly commercially sensitive and their release would cause significant damage to us. We will protect this information to the fullest extent allowed under the Law.

On receipt of the letter from the Assistant Attorney General we immediately contacted Ana Vieira Ayala, Assistant General Counsel and Public Information Officer at The University of Texas System to dispute the ruling and confirmed that we would be challenging the ruling as allowed under section 552.325 of the Government Code.

On February 21, 2017, Robert Davis, Open Records Coordinator at The University of Texas at Austin ("the University"), acknowledged out right to challenge and confirmed in writing that no 160over90 information would be released by the University in response to the request by our competitor, Stamats, until this challenge had been fully resolved.



Under the ruling of February 13, the following information that we had redacted in response to the information request would be required to be disclosed by the University to Stamats:

1. Names and professional profiles of our most senior staff
2. Our organization structure
3. Specially curated samples of our work relevant to this assignment
4. Detailed information on our proprietary business processes
5. Company financial information
6. Itemized proposed client costs
7. IT systems

None of this information is publicly available through our website or any other published means.

As established by Ms. Copeland's letter of February, 13, we are afforded protections from disclosure as follows:

| | |
|---|---|
| 552.104(a) | Exemption from disclosure of "information that, if released to a competitor or bidder", with the test being that this release would confer an advantage, but this would not need to be a decisive advantage. |
| 552.110(a) | Protects trade secrets, "the disclosure of which would cause substantial competitive harm" and where trade secrets have six indicative features that are defined in the letter. |
| 552.110(b) | Protects commercial or financial information, "the disclosure of which would cause substantial competitive harm". |

Under the proposal document as marked by the Attorney General, the following information must be released causing our company substantial competitive harm and creating an advantage to our competitors that otherwise would not exist.

1.    **Names and professional profiles of our most senior staff**

Pages 9, 11, 12 and 13

Unlike many marketing agencies, we do not publish the names or profiles of our staff. All marketing agencies are 'people businesses' and any structured release of non-public information, particularly as it relates to senior employees and company leadership, would create an advantage to our competitors.



Section 552.104(a) of the Code should prevent the release of this information in our proposal.

**2.      Our organization structure**

Pages 6 and 10

The way that marketing agencies organize their management structure and delivery of client services can differ significantly.  Over the past seventeen years, 160over90 has invested in building an organizational structure that is specifically tailored to optimizing branding and marketing effectiveness for our clients.  Release of this confidential information to our competitors would create and advantage to them and cause substantial competitive harm to 160over90.

Sections 552.104(a) and 552.110(b) of the Code should prevent the release of this information in our proposal.

**3.      Samples of our work**

Pages 15, 19 and 26

The tangible creative output of our client engagements is the ultimate insight into our work and proprietary business processes.  This work is confidential to our clients as governed by client contracts and any release requires their explicit consent.

The work samples included in our proposal document were specifically curated by 160over90 for this prospective client based on our confidential insights and assessment of the requirements of the McCombs School of Business.  The combined body of client work included in these samples reveals our strategic insights in respect of the McCombs School of Business and any release of these work samples would confer an advantage to our competitors.

Further, the way in which we curate these work samples online is proprietary to 160over90 and revealing this to our competitors would weaken our competitive position relative to them in any future bids.

Section 552.104(a) of the Code should prevent the release of this information in our

proposal.

4.     **Detailed information on our proprietary business processes**

Pages 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44 and 47

Unlike most marketing agencies, a great part of the success that 160over90 generates for its clients is through the use of proprietary business processes developed over the last seventeen years at significant cost to the company.  Our process rigor is a decisive factor in winning and successfully servicing clients.  It is also critical to the financial results of the company, allowing us to plan and manage our business with industry-leading efficiency.

The information contained in these pages of our proposal to the McCombs School of Business sets out our business processes, methodology, client service model, work flows, practical work steps, deliverables and timings in significant detail.

As regards the six indicative factors for trade secrets under the Code:

| | |
|---|---|
| Information known outside the company | This information is not available outside the company. |
| Extent to which known by employees | This information is known to senior company employees. |
| Measures taken to guard secrecy | Any such materials being shared with clients, prospective clients or other third party are clearly stamped 'proprietary and confidential'. |
| Value of the information to the company and its competitors | This proprietary business approach, methodology and execution planning is critical to our company and underpins all of our client engagements. |
| Effort and cost expended in developing the trade secrets | The company has spent seventeen years developing and refining these proprietary business processes.  This has involved significant financial investment over this period. |
| Difficulty in acquiring or duplicating the information | Duplicating these proprietary processes would be extremely time-consuming and expensive. |



Any release of the information contained in these pages would cause significant commercial and financial damage to 160over90.

Under 552.104(a) of the Code, this information should be withheld as it would confer an advantage to our competitor. Under 552.110(a) these trade secrets should be protected as their release would cause substantial competitive harm. Under 552.110(b) this sensitive commercial information should be protected to prevent 160over90 suffering substantial competitive harm.

5. **Company financial information**

Appendix One – Section 3

Company revenues and turnover are not publicly disclosed. Over the past seventeen years, the company's continued investment has allowed it to achieve much greater scale than its competitors. This information could be turned against 160over90 by competitors us in a bid situation causing substantial competitive harm.

552.110(b) of the Code should prevent disclosure of this confidential information.

6. **Itemized proposed client costs**

Appendix 4

The Attorney General marked our proposal on Page 48 under 552.110(b) to prevent the disclosure of our hourly rate, discount, estimated hours by activity, estimated costs and total estimated hourly fees.

This exact same information is shown in Appendix 4 to the proposal but has not been marked by the Attorney General. Clearly any release of this confidential information would cause significant harm to the company and simultaneously confer advantage to our competitors.

In order to protect our position and in order not to render ineffective the Attorney General's mark to Page 48, Appendix 4 should be consistently marked.



7.    **IT systems**

Page 5

One factor creating competitive advantage between marketing agencies is the choice of project management software tools.  The software systems we use are publicly disclosed and many of our competitors do not avail themselves of sophisticated tools of this nature, so actively notifying them of our systems architecture would confer an advantage to them.

552.104(a) should prevent the release of this information.

Yours sincerely

James Houghton
Chief Financial Officer
One Sixty Over Ninety, LLC

**Copy to:**        Ana Vieira Ayala
               Assistant General Counsel & Public Information Coordinator
               The University of Texas System

# SUPERIOR COURT OF CLARKE COUNTY
# STATE OF GEORGIA

EFILED IN OFFICE
CLERK OF SUPERIOR COURT
CLARKE COUNTY, GEORGIA

**SU17CV0899**
DAVID R. SWEAT
SEP 15, 2017 05:14 PM

Beverly Logan, Clerk
Athens - Clarke County, Georgia

CIVIL ACTION NUMBER  SU17CV0899

One Sixty Over Ninety, LLC

-------------------------------------------

**PLAINTIFF**

**VS.**

Ologie, LLC

-------------------------------------------

**DEFENDANT**

## SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**Jeffrey Willis**
**Rogers & Hardin LLP**
**229 Peachtree Street, NE, 2700 International Tower**
**Atlanta, Georgia 30303**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 15th day of September, 2017.**

Clerk of Superior Court

Beverly Logan, Clerk
Athens - Clarke County, Georgia