UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| ONE SIXTY OVER NINETY, LLC, | : | |
| | : | Case No.:  3:17-cv-00147-CDL |
| Plaintiff, | : | |
| | : | Chief Judge Clay D. Land |
| v. | : | |
| | : | |
| OLOGIE, LLC, | : | |
| | : | |
| Defendant. | : | |

### DEFENDANT OLOGIE, LLC'S CONSOLIDATED MOTIONS TO DISMISS AND TO TRANSFER VENUE

Pursuant to Rule 12(b)(6), defendant Ologie, LLC ("Ologie") moves the Court to dismiss Plaintiff's Complaint in its entirety for failure to state a claim.  Alternatively, pursuant to 28 U.S.C. § 1404(a), Ologie respectfully moves this Court for entry of an Order transferring venue of this case to the United States District Court for the Southern District of Ohio, Eastern Division.  Ologie presents both of these Motions in this consolidated brief pursuant to Local Rule 7.1.  The grounds for these Motions are set forth in the accompanying Memorandum In Support.

Dated:  November 1, 2017

Respectfully submitted,

/s/ Bruce P. Brown
Bruce P. Brown
Georgia Bar No. 064460
Bruce P. Brown Law LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 881-0700

*Counsel for Defendant Ologie, LLC*

Of counsel:

Jeffrey A. Lipps (admitted *pro hac vice*)
Michael N. Beekhuizen (admitted *pro hac vice*)
Carpenter Lipps& Leland
280 Plaza, Suite # 1300
280 North High Street
Columbus, OH 43215
Main Phone:(614)365-4100

**Memorandum In Support**

**I.     Introduction.**

In its Complaint – the second time it has commenced suit – Plaintiff generally alleges that it provided certain undefined confidential and proprietary information to a public institution, non-party University of Georgia ("UGA") in response to a public request for proposals to perform public work for UGA, and that UGA then shared that information with defendant Ologie, LLC ("Ologie"). Plaintiff pleads virtually no other actual facts with respect to Ologie. Instead, Plaintiff makes conclusory, threadbare allegations, including allegations based "upon information and belief" regarding Ologie's purported use of Plaintiff's undefined information. Despite the absence of relevant facts, Plaintiff asserts claims for violation of the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* ("DTSA"), the Georgia Trade Secrets Act, O.C.G.A. § 10-1-761 *et seq.* ("GTSA") and two other state law "claims" for expenses of litigation and punitive damages.

Plaintiff's claims against Ologie should be dismissed as a matter of law on three independent grounds. First, the effective date of the federal DTSA was May 11, 2016. Plaintiff, however, alleges that the subject misappropriation occurred on March 7, 2016 – two months earlier. Accordingly, the DTSA claim should be dismissed as a matter of law.

Second, information available to the public is not a "trade secret" under the federal DTSA or the state GTSA. Yet, Plaintiff alleges that it submitted the subject information to UGA, a public institution. Under clear Georgia law, information submitted to public institutions like UGA is publicly available. *See* O.C.G.A. §§ 50-18-70(a) & 50-18-71(a). Although trade secret information may be exempted from public disclosure, certain conditions must be met. Specifically, at the time the trade secret information is submitted to the public institution, the submitting entity must also submit an affidavit declaring specific information to be a trade secret.

3

O.C.G.A. § 50-18-72(a)(34).  Plaintiff does *not* allege that it complied with this clear statutory mandate.  Instead, Plaintiff alleges that it submitted an affidavit long *after* it submitted the information to UGA, and long *after* the information was allegedly shared with Ologie.  (The purported affidavit is not attached to the Complaint and is not otherwise available to Ologie).  Accordingly, as a matter of law, any information Plaintiff submitted to UGA was, and has been, publicly available at all relevant times, and cannot constitute a "trade secret" under the federal DTSA or the state GTSA.[1]

Third, Plaintiff's Complaint does not state an actionable claim against Ologie; it contains virtually no material allegations regarding Ologie.  Plaintiff says that UGA "shared" the subject undefined information with Ologie and that "upon information and belief, Ologie utilized the Information[.]"  Complaint ¶¶ 21-22.  As a matter of law, these allegations are not sufficient to state a federal DTSA or state GTSA claim.  Misappropriation of a trade secret requires the use of "improper means" or a knowing breach of duty in acquiring the trade secret information.  *See* 18 U.S.C. § 1839(5), (6); O.C.G.A. § 10-1-761(1), (2).  Plaintiff does not allege that Ologie used any improper means in purportedly obtaining Plaintiff's information.  Plaintiff also pleads no facts establishing that Ologie actually used Plaintiff's information.  Plaintiff instead only makes a conclusory assertion based solely "upon information and belief."  Such an allegation is insufficient.  The Complaint simply fails to allege any operative facts demonstrating Ologie violated the federal DTSA or state GTSA.

---

[1] In Plaintiff's first complaint against Ologie, Plaintiff failed to allege the existence of any affidavit whatsoever.  *See* Complaint, *One Sixty Over Ninety, LLC v. Ologie, LLC, et al.*, Case No. SU17CV0549, Superior Court of Athens-Clarke County, Georgia (attached as Ex. A).  Ologie moved to dismiss on various grounds, including Plaintiff's failure to allege compliance with O.C.G.A. § 50-18-72(a)(34).  Plaintiff then voluntarily dismissed its complaint, and apparently thereafter submitted an affidavit to UGA for the first time – but long past the time it should have done so if it had wanted to maintain the confidentiality of any information submitted to UGA.

There simply are no factual allegations as to Ologie that would justify moving this case past the pleading stage and requiring the parties to engage in time-consuming and costly discovery.  Indeed, as discussed below, this lawsuit appears to be nothing more than a misguided effort to retaliate against Ologie for a lawsuit Ologie filed against Plaintiff and two of its executives in Ohio state court more than a year ago, and which only recently concluded.  Plaintiff's claims against Ologie should be dismissed as a matter of law.

Lastly, Ologie also requests transfer of venue to the Southern District Court of Ohio, Eastern Division pursuant to 28 U.S.C. § 1404.  This request is discussed further below following discussion of Ologie's motion to dismiss.

## II.    Plaintiff's Allegations.

Plaintiff alleges that it submitted certain business information to UGA in response to a request for proposal ("RFP") regarding a Strategic Brand Initiative.  Complaint ¶¶ 12, 14, 18.  Plaintiff alleges that the information it submitted to the public university, UGA, is confidential and proprietary.  *Id.*  As discussed further below, however, Plaintiff fails to allege that it timely submitted the affidavit required under Georgia law to maintain the confidential nature of any materials submitted to UGA.

Plaintiff also alleges UGA "shared" the information with Ologie.  *Id.* ¶ 29.  Plaintiff, however, does not allege any facts demonstrating Ologie obtained the information through any improper means or that Ologie breached any duty to Plaintiff (or to UGA).  Plaintiff further alleges that "[u]pon information and belief, Ologie has utilized the Information," but Plaintiff provides no facts whatsoever in support of this conclusory assertion.  *Id.*

Despite the virtual absence of any relevant factual allegations as to Ologie, Plaintiff asserts against Ologie a claim for violation of the federal Defend Trade Secrets Act, the Georgia

Trade Secrets Act, and state law claims for "expenses of litigation," and punitive damages. All of these claims fail as a matter of law, as discussed below.

### III.     Plaintiff's Claims Should Be Dismissed For Failure To State A Claim.

#### A.     Rule 12(b)(6) Standard.

Rule 12(b)(6) "requires that the complaint plead enough facts to state a claim for relief that is plausible –not just conceivable—on its face." *Metellus v. Bank of America, N.A.*, 2016 WL 7985330 at *2 (M.D. Georgia March 28, 2016) (Abrams, J.). "Although the court must 'take the factual allegations in the complaint as true . . . it is not required 'to accept labels and legal conclusions in the complaint as true.'" *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Ashcroft v Iqbal*, 556 U.S. 662, 678 (2009)). Furthermore, "conclusory allegations upon information and belief" are not sufficient to state a claim. *Id.* at *4.

#### B.     Plaintiff's Federal Defend Trade Secrets Act Claim Fails As A Matter Of Law.

In its Second Cause of Action, Plaintiff asserts a claim under the federal DTSA. Generally, the DTSA provides a cause of action for the "misappropriation" of "trade secret" information, subject to certain statutory definitions and limitations. *See* 18 U.S.C. §§ 1836, 1839. Here, Plaintiff's DTSA claim fails as a matter of law because (1) the alleged misappropriation occurred prior to the DTSA's effective date; (2) Plaintiff has failed to allege the use of any improper means in acquiring the subject information; (3) Plaintiff has failed to allege the existence of any trade secret information under applicable Georgia law; and (4) Plaintiff has failed to adequately alleged any use or disclosure of the subject information.

### 1. The Alleged Acts Of Misappropriation Occurred Prior To The DTSA's Effective Date.

The DTSA only applies to misappropriation which occurs after its effective date of May 11, 2016. *See* Pub. L. No. 114-153, § 2(e); *Adams Arms LLC v. Unified Weapon Systems Inc.*, 2016 WL 5391394 at *5 (M.D. Florida September 27, 2016). Here, Plaintiff alleges that the purported misappropriation occurred on March 7, 2016 – two months *prior* to the DTSA's May 11, 2016 effective date. Complaint ¶ 20. Accordingly, Plaintiff's DTSA claim fails as a matter of law.

Ologie acknowledges that several courts have held the DTSA will apply to separate acts of misappropriation that occurred after the DTSA's effective date, even where the original misappropriation occurred prior to the effective date. *See Adams Arms LLC* at *6 ("the Court find that Adams Arms may state a plausible claim for relief, if Adams Arms sufficiently alleges a prohibited 'act' occurring after May 11, 2016"); *Brand Energy & Infrastructure Services, Inc.*, 2017 WL 1105648 at *4 (E.D. Penn. March 24, 2017) (same). In these cases, however, the plaintiff alleged specific instances of misappropriation after the effective date. *See, e.g.*, *Adams Arms* at *6 ("The Complaint specifically alleges that UWS signed a contract with the Peruvian military in late May or early June, which was after DTSA's effective date, and that the contract used" plaintiff's trade secret information); *Brand Energy* at *4 ("Brand's amended complaint alleges multiple uses of its trade secrets that continued to occur after the date the DTSA was enacted").

Here, in contrast, Plaintiff does *not* allege any specific acts which occurred after May 11, 2016. Plaintiff only pleads facts regarding an alleged misappropriation on March 7, 2016. At most, Plaintiff alleges that "Upon information and belief, Ologie has utilized the information" for UGA and other projects. Complaint ¶¶ 21-22. This fails to satisfy Plaintiff's burden of pleading

7

sufficient *facts* to state a claim, *i.e.*, actual misappropriation occurring after May 11, 2016. Indeed, this Court has previously rejected the use of threadbare allegations based "upon information and belief." *Metellus v. Bank of America, N.A.*, 2016 WL 7985330 at *4 (M.D. Georgia March 28, 2016) (Abrams, J.) ("The Complaint makes a number of conclusory allegations upon information and belief . . . These assertions are not supported by sufficiently-alleged facts"). There simply are no facts alleged in the Complaint demonstrating any misappropriation after May 11, 2016. Accordingly, Plaintiff's DTSA claim fails as a matter of law and should be dismissed.

### 2. Plaintiff Has Failed To Allege Ologie Acquired Any Purported Trade Secret Information Through Improper Means.

In order to be actionable, it is *not* enough for one party to receive or use another party's trade secret information. Rather in order to constitute "misappropriation," the acquisition and/or use of the trade secret must have occurred either "by improper means" or "under circumstances giving rise to a duty to maintain the secrecy of the trade secret[,]" or knowingly through a person who owed such a duty. 18 U.S.C. § 1839(5)(A), (B). "Improper means," in turn, is defined as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6).

Here, Plaintiff simply does not allege that Ologie engaged in any theft, bribery, misrepresentation or espionage. At most, Plaintiff makes the conclusory and threadbare allegation that "Ologie knew that UGA was under a duty not to reveal Plaintiff's confidential and proprietary information to Ologie." Complaint ¶ 20. Plaintiff, however, pleads no facts to support this conclusion. Furthermore, Plaintiff has not pled or identified any legal duty owed by Ologie to Plaintiff. There simply was no "misappropriation" through any improper means or breach of duty. Plaintiff's DTSA claim should be dismissed as a matter of law.

### 3.      Plaintiff Has Failed To Allege That Any Trade Secret Information Is Involved.

Generally, under the DTSA, a "trade secret" is defined as business information where "the owner thereof has taken reasonable measures to keep such information secret." 18 U.S.C. § 1839(3)(A). Here, Plaintiff alleges that it submitted its purported trade secret information to UGA – a public university. Complaint ¶ 18. As a matter of law, however, information provided to public institutions like UGA is available to the public. In Georgia, there is a "strong public policy . . . in favor of open government[.]" O.C.G.A. § 50-18-70(a). "[P]ublic access to public records should be encouraged to foster confidence in government and so that the public can evaluate the expenditure of public funds and the efficient and proper functioning of its institutions." *Id*. Accordingly, "[a]ll public records shall be open for personal inspection and copying" unless "exempted from disclosure." O.C.G.A. § 50-18-71(a). Any exceptions to the disclosure of public records, however, are to be "interpreted narrowly." O.C.G.A. § 50-18-70(a).

Trade secrets submitted in response to a request for proposal may be exempted from disclosure, but only if an affidavit is provided when the trade secret information is submitted to the public institution:

> An entity submitting records containing trade secrets that wishes to keep such records confidential under this paragraph shall submit and attach to the records an affidavit affirmatively declaring that specific information in the records constitute trade secrets pursuant to Article 27 of Chapter 1 of Title 10.

O.C.G.A. § 50-18-72(a)(34).

Here, Plaintiff does not allege that it submitted any such affidavit at the time it submitted the subject information to UGA, nor does Plaintiff attach a copy of any such affidavit to the Complaint. Rather, Plaintiff alleges that "*[a]fter* it discovered UGA shared the Information with Ologie, Plaintiff had multiple discussions with UGA" and "submitted an affidavit to UGA in

9

accordance with O.C.G.A. § 50-18-72." Complaint ¶ 28 (emphasis added). In fact, Plaintiff previously filed suit in state court but voluntarily dismissed after Ologie filed a motion to dismiss. *See* Complaint, *One Sixty Over Ninety, LLC v. Ologie, LLC, et al.*, Case No. SU17CV0549, Superior Court of Athens-Clarke County, Georgia. Plaintiff's original complaint does not mention the filing of any statutory affidavit whatsoever. Accordingly, Ologie moved to dismiss the original complaint on the grounds that Plaintiff had failed to submit the required statutory affidavit at the time Plaintiff submitted its business information to UGA. Plaintiff did not file any response, and instead voluntarily dismissed its original complaint. Only then did Plaintiff attempt to submit the statutory affidavit to UGA – long after the alleged disclosure occurred and only *after* Plaintiff's original complaint faced dismissal on the merits. Whether Plaintiff made an "after the fact" submission of the required affidavit, however, is irrelevant. At the time Plaintiff submitted its information to UGA, and at the time the alleged disclosure to Ologie occurred, Plaintiff had *not* submitted any affidavit to UGA. Therefore, any potential protection under O.C.G.A. § 50-18-72(a)(34) was waived.

By statute and in accordance with the strong public policy of the State of Georgia in favor of open government and open records, the undefined information Plaintiff submitted to UGA was public information at all relevant times. Because the subject information was, and has been, publicly available, and because Plaintiff timely failed to take action necessary to protect its information before that information was allegedly disclosed to Ologie, that information does not qualify as a "trade secret" under the DTSA. Plaintiff's claim for violation of the DTSA therefore fails as a matter of law for this reason as well.

### 4. Plaintiff Has Failed To Allege Ologie Used Or Disclosed Plaintiff's Information.

Lastly, Plaintiff pleads *no* facts indicating what, if any, use Ologie made of Plaintiff's purported confidential information. As already noted, Plaintiff instead makes threadbare, conclusory allegations based on "information and belief." This is not sufficient to satisfy Plaintiff's obligations to plead facts sufficient to state a claim. In short, Plaintiff has pled no facts indicating that Ologie violated the DTSA. Plaintiff's DTSA claim against Ologie therefore fails as a matter of law.

### C. Plaintiff's Georgia Trade Secrets Act Claim Also Fails As A Matter Of Law.

In its First Cause of Action, Plaintiff asserts a state law claim for violation of the GTSA. For purposes of this motion, the relevant provisions of the state GTSA are the same or similar to the federal DTSA discussed above. *See* O.C.G.A. § 10-1-761(1) (defining "improper means"), (2) (defining "misappropriation"), and (4) defining "trade secret"). Accordingly, Plaintiff's state GTSA claim fails for the same reasons discussed above with respect to the federal DTSA (except for the effective date issue which only applies to the federal DTSA).

### D. Plaintiff's Remaining State Law Claims Are Barred By The Georgia Trade Secrets Act.

In its Third and Fourth Causes of Action, Plaintiff asserts claims for "litigation expenses" and "punitive damages" based on Georgia statute. *See* Complaint ¶¶ 54, 58. As an initial matter, as a matter of law, the Third and Fourth Causes of Action are not actionable stand-alone claims, but rather are requests for relief premised on the assertion that there has been an underlying trade secret violation. No such violation has occurred, as discussed above, and accordingly, these remaining claims should be dismissed as a matter of law.

But these remaining claims should also be dismissed as a matter of law pursuant to the Georgia Trade Secrets Act. Specifically, O.C.G.A. § 10-1-767(a) provides that "this article shall

11

supersede conflicting tort, restitutionary, *and other laws of this state* providing civil remedies for misappropriation of a trade secret." (Emphasis added). As the Georgia Supreme Court has made clear, this provision should be broadly applied, and preempts alternative theories of recovery even where the subject information ultimately "does not qualify as a trade secret under the act." *Robbins v. Supermarket Equipment Sales, LLC*, 290 Ga. 462, 465-466 (2012).

Applying § 10-1-767(a), numerous courts have dismissed a plaintiff's non-GTSA claims where those claims are based on the alleged misappropriation of trade secrets. *See Penalty Kick Management LTD v. Coca Cola Company*, 318 F.3d 1284, 1297-1298 (11th Cir. 2003); *Meyn America, LLC v. Tarhell Distributors, Inc.*, 36 F.Supp.3d 1395, 1408-1409 (M.D. Georgia 2014).

Furthermore, the GTSA already contains provisions providing for damages and attorneys' fees under specified conditions. O.C.G. A. §§ 10-1-763, 10-1-764. Plaintiff cannot rely on another Georgia law in an effort to impose litigation costs or punitive damages against Ologie for an alleged GTSA violation. Accordingly, Plaintiff's remaining state law claims should be dismissed as well.

**IV.     This Matter Should Be Transferred To The United States District Court For The Southern District Of Ohio, Eastern Division.**

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" As this Court has explained, the "threshold question in determining if a change of venue is warranted, is whether the suggested forum is one in which the case could have been properly brought originally. If the suggested forum is one in which the case could have been brought, courts then undertake "an individualized case-by-case consideration of convenience and fairness." *Rigby v. Flue-Cured Tobacco Cooperative Stabilization Corp.*, 2006 WL 1312412 at *2 (M.D. Georgia May 11, 2006) (Lawson, J.).

Applying these standards, this matter should be transferred to the United States District Court for the Southern District of Ohio, Eastern Division, as discussed below.

### A. This Case Could Have Been Brought Originally In The Southern District Of Ohio.

A case could have been brought originally in the suggested forum if the following conditions are met: "(1) the suggested court must have proper subject matter jurisdiction, (2) the suggested court must be able to exercise personal jurisdiction over all defendants, and (3) venue must be proper in the suggested forum." *Rigby* at *2.

Here, the Southern District of Ohio has subject matter jurisdiction over this case inasmuch as Plaintiff has asserted a federal claim under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*  *See* Complaint ¶¶ 41-51.  Accordingly, the Southern District of Ohio has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  The Southern District of Ohio can also exercise personal jurisdiction over defendant Ologie inasmuch as Ologie is located in Columbus, Ohio – within the territorial jurisdiction of the Southern District of Ohio (including the Eastern Division).  *See* Declaration of Bev Ryan at ¶ 3 (attached as Ex. B).  Lastly, pursuant to 28 U.S.C. § 1391(b)(1), venue is proper in the Southern District of Ohio inasmuch as it is a judicial district in which defendant Ologie resides.  In sum, transfer of venue is appropriate because this matter could have been brought originally in the Southern District of Ohio, Eastern Division.

### B. The Southern District Of Ohio Is A More Convenient Forum.

"Courts consider three main factors in determining whether a proposed district will be more convenient than the current district: the convenience of the parties, the convenience of the witnesses, and the interests of justice. *See* 28 U.S.C. § 1404 (2000). In addition to these three factors, courts also consider additional factors relevant to the determination. These additional

factors include the following:(1) where the majority of the events at issue in the case took place; (2) the ability to compel the attendance of unwilling witnesses in the suggested forum; (3) the location of the physical evidence; and (4) the familiarity of the courts with the applicable law." *Rigby* at *3. As discussed below, these factors weigh in favor of transfer.

### 1. Convenience Of The Parties.

Where "the plaintiff does not reside in the district in which he or she brought the action, this fact militates in favor of a transfer to the district where the defendant resides, because the plaintiff will be inconvenienced by having to travel whether the action is transferred or not." *Rigby* at *3 (transferring venue where plaintiff did not reside in the Middle District of Georgia). Here, Plaintiff does not reside in Georgia. Rather, Plaintiff is headquartered in Philadelphia, Pennsylvania, and has an office in Columbus, Ohio. Ryan Declaration at ¶ 4. Ologie, in turn, resides in, and has its sole office in, Columbus, Ohio. *Id.* at ¶ 3.

Ologie also notes that Plaintiff and Ologie were engaged in recent litigation in Ohio state court, which litigation spanned an entire year. Ryan Declaration at ¶ 5; *see also Ologie, LLC v. One Sixty Over Ninety, LLC*, Case No. 16CVH-8442 (Franklin County, Ohio Common Pleas). In that litigation, Ologie sued Plaintiff and two of its Columbus, Ohio executives, Carey Schmitt and J. Matthew Yuskewich, in September 2016. Ryan Declaration at ¶ 5. Schmitt and Yuskewich are two former Ologie executives who were recruited and hired away by Plaintiff. *Id.* In breach of their employment agreements with Ologie, Schmitt and Yuskewich took *thousands* of Ologie confidential work materials when they left Ologie's employment and went to work for Plaintiff. *Id.* Ologie was successful in obtaining a preliminary injunction requiring Schmitt and Yuskewich to return the thousands of Ologie documents they took in violation of their employment agreements, and requiring them to refrain from disclosing any Ologie confidential information to their new employer (Plaintiff here). Ologie then voluntarily

14

dismissed the Ohio lawsuit on August 25, 2017. *Id.* In short, One Sixty is no stranger to litigation in Columbus, Ohio, and has an office and two key executives in Columbus, Ohio as well. Plaintiff does not reside in Georgia. Accordingly, the convenience of the parties weighs in favor of transfer.

### 2.    Convenience Of The Witnesses/Ability To Compel Attendance.

Plaintiff contends that Ologie has used Plaintiff's confidential business information as part of Ologie's business projects (an allegation which Ologie denies). Ologie is headquartered in Columbus, Ohio, and, as a result, most of the relevant fact witnesses are Ologie employees who reside in Columbus, Ohio. Indeed, in the Ohio litigation, Plaintiff took a scorched earth approach and deposed ten of Ologie's employees. Ryan Declaration at ¶ 6.[2] Plaintiff even attaches to its Complaint a court decision from the Ohio litigation involving the deposition testimony of seven of those Ologie employees. In contrast, Plaintiff's Complaint identifies only two individuals at UGA. *See* Complaint ¶ 6. In the event this matter proceeds, Ologie will work to minimize any inconvenience to those two individuals, including by taking their depositions (if necessary) in Georgia. And, with respect to Plaintiff, there is no greater inconvenience to litigating in Ohio than in Georgia. Indeed, Plaintiff has an office in Columbus, Ohio and two of its Ohio executives (Carey Schmitt and Matt Yuskewich) were defendants in the Ohio litigation. Ryan Declaration at ¶ 5. Accordingly, on balance, the convenience of the witnesses weighs in favor of Ologie.

With respect to compelling the attendance of witnesses, the Middle District of Georgia presents greater potential difficulty than the Southern District of Ohio. As noted, most of the relevant witnesses are likely to be Ologie current and former employees who could not be

---

[2]  Those ten Ologie employees were Laurie Bethge, Bev Ryan, Erin Burk, Bill Faust, Matt Freedman, Kyle Kastranec, Carolyn Kent, Whitney Lee, Kelly Ruoff, and Steven Brothers-McGrew.

15

compelled to attend trial in Georgia. Significantly, three of the individuals deposed in the Ohio litigation (Carolyn Kent, Stephen Brothers-McGrew, and Matt Freedman) are no longer Ologie employees and also could not be compelled to attend trial in the Middle District of Georgia. Ryan Declaration at ¶ 6. Likewise, Carey Schmitt and Matt Yuskewich are two individuals who were employees of Ologie in March 2016 (and are now employees of Plaintiff in Columbus, Ohio), who are potential witnesses in this case, and who Ologie could not compel to testify in Georgia. Accordingly, this factor weighs in favor of transfer as well.

### 3. The Location Where The Majority Of The Events Occurred/Location Of The Physical Evidence.

Although Plaintiff alleges that Ologie was provided with Plaintiff's information by UGA, Plaintiff contends that Ologie used the information not only for UGA, but "in association with work for other clients of Ologie[.]" Complaint ¶ 22. In other words, Plaintiff's allegations are not limited to, or based solely, on events occurring in Georgia. Furthermore, Ologie is headquartered in (and has only one office in) Columbus, Ohio where it conducts its work. Ryan Declaration at ¶ 3. Accordingly, evidence regarding its work for clients is located in Columbus, Ohio. This factor weighs in favor of transfer.

### 4. Familiarity Of The Courts With Applicable Law.

This case does not present any difficult questions of state law. As discussed, Plaintiffs' primary claims are based on the federal DTSA and the state GTSA, which mirrors the DTSA for all relevant purposes here. Furthermore, to the extent state law questions are involved, federal courts routinely apply state law for diversity jurisdiction purposes, and there is no reason to believe the Southern District of Ohio would be presented with any difficulty in applying Georgia law, as it has done in numerous cases. *See, e.g.*, *Kareem v. J.P. Morgan Chase Bank, N.A.*, 2015 WL 4351750 (S.D. Ohio July 15, 2015) (applying Georgia law); *In re Porsche Cars North*

*America*, 880 F.Supp.2d 801 (S.D. Ohio July 19, 2012) (applying Georgia law). Furthermore, Ohio has a trade secret act, which is substantially similar to the DTSA and GTSA. *See* O.R.C. § 1333.61 *et seq*. Accordingly, familiarity with the applicable law is a neutral factor as applied here.

### 5. Interests Of Justice.

In sum, Ologie respectfully submits that the interests of justice weigh in favor of transferring this matter to the Southern District of Ohio. Ologie is headquartered in Columbus, Ohio, most of the witnesses (including all of Ologie's employees) are located in Columbus, Ohio, and the physical evidence will be located in Columbus, Ohio. In contrast, Plaintiff does not reside in Georgia, but does have a Columbus, Ohio office and has already engaged in a year of litigation with Ologie in Columbus, Ohio, where two of its key executives work and reside. Accordingly, this matter should be transferred to the Southern District of Ohio, Eastern Division. *See Rigby* at *4-5 (transferring venue where plaintiff did not reside within the Middle District of Georgia, where the majority of operative facts occurred outside the district, and where the convenience of the parties and witnesses weighed in favor of transfer).

## V. Conclusion.

Plaintiff's federal DTSA claim fails as a matter of law because the alleged misappropriation occurred prior to the DTSA's effective date. Furthermore, Plaintiff's threadbare, conclusory allegations fail to plead actual facts stating a claim under either the federal DTSA or the state GTSA. Both claims fail because Plaintiff does not allege any improper means, any actual misappropriation or use of the subject information, and because the subject information was publicly available when Plaintiff submitted it to UGA, a public institution. Plaintiff's remaining state law claims should likewise be dismissed because they are premised on the DTSA and GTSA claims, and are otherwise preempted by the state GTSA.

For the foregoing reason's, Plaintiff's Verified Complaint should be dismissed as a matter of law in its entirety with prejudice.  Alternatively, this matter should be transferred to the United States District Court for the Southern District of Ohio, Eastern Division.

Dated: November 1, 2017                              Respectfully submitted,

/s/ Bruce P. Brown
Bruce P. Brown
Georgia Bar No. 064460
Bruce P. Brown Law LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 881-0700

*Counsel for Defendant Ologie, LLC*

Of counsel:

Jeffrey A. Lipps (admitted *pro hac vice*)
Michael N. Beekhuizen (admitted *pro hac vice*)
Carpenter Lipps& Leland
280 Plaza, Suite # 1300
280 North High Street
Columbus, OH 43215
Main Phone:(614)365-4100

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing Defendant Ologie, LLC's Consolidated Motions To Dismiss And To Transfer Venue was filed electronically on November 1, 2017. Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel, including the following:

> Jeffrey W. Willis
> Rogers & Hardin LLP
> 2700 International Tower
> 229 Peachtree Street, N.E.
> Atlanta, Georgia  30303
>
> *Attorney for Plaintiff*

/s/ Bruce P. Brown
*One of the Attorneys for Defendant Ologie, LLC*